LEWIS *v.* LEWIS.

4-6394                                    151 S. W. 2d 998

Opinion delivered June 16, 1941.

*Harper & Harper,* for appellant.

*Hardin & Barton,* for appellee.

HOLT, J. Appellee, Yvette Lewis, obtained a decree of divorce from appellant, Charles H. Lewis, in the Sebastian chancery court, on the grounds of personal indignities, cruel treatment and adultery. The decree also embraced a property settlement and awarded appellee $60 per month alimony. The appellant on this appeal questions only the amount of the alimony award.

This court has many times announced the rule that in fixing the amount of alimony to be awarded a wide discretion rests with the trial court and unless there appears to be a clear abuse in the exercise of this discretion it will not be disturbed by this court. In fixing the amount of alimony, of foremost consideration is the ability of the husband to pay. Consideration should also be given to the station in life of the parties and the conduct of each as bearing upon the cause of the separation. *Shirey* v. *Shirey,* 87 Ark. 175, 112 S. W. 369; *Johnson* v. *Johnson,* 165 Ark. 195, 263 S. W. 379; *Upchurch* v. *Upchurch,* 196 Ark. 324, 117 S. W. 2d 339.

The rule is stated in 17 American Jurisprudence 470, §§ 602, 603, in the following language: "In addition to the financial circumstances of the parties, the courts should give consideration to their social standing and their general physical condition in reaching a decision as to the amount of permanent alimony. The amount of alimony awarded should be so apportioned as to secure to her the same social standing, comforts, and luxuries of life as she would probably have enjoyed had it not been for the enforced separation, but care should be taken that it does not amount to an appropriation of the entire estate of the husband. . . .

"The conduct of the parties may enter into the determination of the amount of alimony to be allowed. Thus, if the wife is free from blame, the allowance will be greater than if her conduct was conducive to her husband's fault. Similarly, where the husband's offense has been exceedingly base . . . there should be no hesitancy in making a liberal allowance. Also, the con-

duct of the wife during the existence of the marriage relation will have weight in determining the amount of alimony to be allowed."

This record reflects that the parties to this proceeding were married in 1914 and lived together until the early part of 1941, a period of approximately 27 years. Three children were born to them, all of whom died in infancy. Appellee is now 40 years of age, her health materially impaired largely on account of abusive treatment at the hands of appellant. She is not physically able to support herself, has no property other than a one-half interest in a farm renting for $10 per month, certain household furniture, and $500 awarded to her in the property settlement. It is practically undisputed that she has been without fault.

Appellant operates daily a four-seated passenger bus between Fort Smith and Mansfield, making three round trips per day, except on Sunday when only two trips are made. According to his testimony he realizes an average of $7 per day from passengers and $125 per month from a mail contract and from carrying newspapers. His mail contract will expire June 31, 1943. He estimates his gross annual revenue at approximately $4,030 and expense of operating the bus and other necessary expenses at $2,768.50, or an average monthly net income of $105. Appellant submitted an itemized operating expense account but admitted that in the main it was but an estimate since he did not keep books. There was some other testimony tending to corroborate appellant.

Appellee testified that her husband told her his expenses did not exceed $100 per month and his receipts from passengers would amount to approximately $10 per day instead of the $7 as claimed by appellant. Appellee further testified that appellant's gross income was approximately $5,150 per year, or $3,950 per year net, or an average monthly income of $329.16. The testimony of Mr. Dunn tended to corroborate appellee. Dunn also testified: "Q. When you say $100 a month, do you mean $1,200 a year for his gross operating expenses? A. That is what he told me when he was trying to sell it; that the expenses on the bus would run $100 a month."

The bus in question was a 1939 Ford which cost $1,600. A new motor had been installed at a cost of $117. Two new sets of tires are required annually at a cost of $170. There were many other items of expense in connection with the operation that we do not deem it necessary to set out here.

Appellant also testified (quoting from appellant's brief): ". . . that he gets $10 a month rent and every time he collects it he gives his wife half of it; that in July or May of 1940 they separated and he has paid her $50 a month every month since then and also paid the household expenses; . . ."

After a careful review of the testimony presented, we have reached the conclusion that while the amount of alimony awarded appellee appears to be liberal, we think the preponderance of the testimony is in support of the trial court's action. As has been indicated, the undisputed testimony in this case shows appellee to be without blame; the fault lies with appellant and a liberal allowance is justified. Able counsel for appellant, with becoming frankness, admit that his conduct cannot be condoned or upheld. Appellant does not deny his adulterous relationship with the other woman, that his conduct has been of the basest kind and the great preponderance of the testimony shows that appellee's present illness is due in most part to appellant's cruel treatment. Prior to the time that appellant became enamored of the other woman in this case, the married life of these two parties appeared to be happy and they had managed to buy a small farm and save more than $1,000 above living and business expenses. Since their separation appellant has, according to his own testimony, been able to pay his wife $50 per month and household expenses in addition. This voluntary action of appellant, standing alone, is strong evidence of his ability to pay the award in question. While the cause is tried *de novo* here, the court below, who heard the testimony, is in a much better position to pass upon the reasonableness of the alimony awarded than the judges of this court could possibly be.

On the whole case, in the present circumstances in which we find the parties, we conclude that the decree is

not against the preponderance of the testimony and accordingly we affirm.